1  **ALAN G. DOWLING, ESQ.** (Cal. SBN 70686)
   Email address:   agdowling@aol.com
2  **LAW OFFICES OF ALAN G. DOWLING**
3  1043 Pacific St., No. 1
   Santa Monica, California 90405
4  Telephone (cell): 818-679-6395
   Fax:  424-238-5366
5  *Attorneys for Plaintiffs*
   *Alan G. Niven and Heather Vincent-Niven*
6

7                    **UNITED STATES DISTRICT COURT**
8                    **CENTRAL DISTRICT OF CALIFORNIA**
9

10 **ALAN G. NIVEN** and           | **Case No. 2:23-cv-7917**
11 **HEATHER VINCENT-NIVEN,**      |
                                   | Hon. _____,
12          Plaintiffs,            | United States District Judge
13     vs.                         | **COMPLAINT FOR INTENTIONAL**
                                   | **MISREPRESENTATION AND**
14                                 | **CONCEALMENT, NEGLIGENT**
   **UNIVERSAL MUSIC GROUP, INC.,** a | **MISREPRESENTATION, BREACH OF**
15 Delaware corporation, doing business as | **WRITTEN CONTRACT, CONVERSION,**
   Capitol Records Group,          | **DECLARATORY RELIEF, ACCOUNTING,**
16 **UMG RECORDINGS, INC.,** a Delaware | **AND IMPOSITION OF CONSTRUCTIVE**
   corporation, and                | **TRUST**
17 DOES 1 through 10, inclusive,   |
18          Defendants.            | **REQUEST FOR TRIAL BY JURY**
19
20
21
22
23
24
25
26
27
28

ALAN G.
DOWLING, A
PROFESSIONAL
CORPORATION
SANTA MONICA, CA

*Niven v. Universal Music Group, Inc. et al. –*
*USDC, CD CA, 2:23-cv-7917*                           1                           *COMPLAINT*

## **COMPLAINT**

Plaintiffs ALAN G. NIVEN and HEATHER VINCENT-NIVEN, individuals, for their Complaint herein, allege:

### JURISDICTION AND VENUE

1. Jurisdiction lies in this Court under 28 U.S.C. Section 1332 (a) and (c), based on diversity of citizenship because Plaintiffs are individuals each residing in the State of Arizona while, on information and belief, the named business entity defendants are corporations organized under the laws of the State of Delaware but qualified to do and doing business in the County of Los Angeles, State of California, and the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

2. Venue lies within this Court under 28 U.S.C. Sections 1391(a) and (b), in that the named business entity defendants each do business and are subject to personal jurisdiction in the Central District of California, and a substantial part of the events or omissions on which Plaintiffs' claims are based occurred in the Central District of California.

### IDENTIFICATION OF PARTIES

3. Plaintiff ALAN G. NIVEN ("Alan Niven") is an individual residing in the State of Arizona.

4. Plaintiff HEATHER VINCENT-NIVEN ("Heather Niven") is an individual residing in the State of Arizona.

5. Plaintiffs are husband and wife.

6. On information and belief, at all times relevant hereto Defendant UNIVERSAL MUSIC GROUP, INC. ("UMG Inc."), has been and is a corporation organized and existing under the laws of the State of Delaware, has maintained its principal place of business in the County of Los Angeles, State of California, and has engaged in business in the Central District of California, besides doing business elsewhere throughout the United States and around the world, including at various times under the fictitious business name of Capitol Records Group. On further information and belief, since 2012 UMG Inc. has been and is the successor in interest to certain pre-existing business entities including Capitol Records, Inc., Capitol Records, LLC, and EMI with regard to various assets, rights and/or contracts to which this action pertains.

7. On information and belief, at all times relevant hereto Defendant UMG RECORDINGS, INC. ("UMG Recordings"), has been and is a corporation organized and existing under the laws of the State of Delaware, has maintained its principal place of business in the County of Los Angeles, State of California, and has engaged in business in the Central District of

ALAN G.
DOWLING, A
PROFESSIONAL
CORPORATION
SANTA MONICA, CA

*Niven v. Universal Music Group, Inc. et al. –*
*USDC, CD CA, 2:23-cv-7917*                                          *COMPLAINT*

2

California, besides doing business elsewhere throughout the United States and around the world. On further information and belief, at all times relevant hereto UMG Recordings has been and is the successor in interest to certain pre-existing business entities including Capitol Records, Inc., Capitol Records, LLC, and EMI with regard to various assets, rights and/or contracts to which this action pertains.

8.      Plaintiffs are unaware of the true names and capacities of the Defendants sued as DOES 1 through 10.  Plaintiffs will seek leave of Court to amend this Complaint to allege the true names and capacities of the DOE Defendants as the same become known.  Plaintiffs are informed and believes and thereon allege that each of the DOE defendants was responsible with the named Defendants for each act or omission herein alleged.

9.      Plaintiffs are informed and believe and thereon allege that, in doing the acts complained of herein, Defendants were each the agent, joint venturer, servant, employee, and/or representative of each other Defendant and were each acting within the scope of the agency, employment, and representation, with the advance knowledge, acquiescence or subsequent ratification of every remaining Defendant; Defendants agreed together to perform the acts complained of herein; and each Defendant is responsible and liable to Plaintiffs for all damages herein claimed, as and to the extent that such damages resulted from the actions of the Defendant itself.

10.     Defendants UMG Inc. and UMG Recordings, along with DOES 1 through 10, are hereinafter sometimes referred to collectively as "Defendants."

<u>ALLEGATIONS COMMON TO ALL CLAIMS</u>

11.     Over the last four decades, Plaintiff Alan Niven has been a renowned musical artist's manager, record producer and songwriter, representing, working with and contributing to the success of several of the most revered and renowned musical artists in rock music, most prominent among them the bands Guns N' Roses and Great White, but also working with artists such as Motley Crue. Berlin, Dokken and Clarence Clemons, among others.

12.     In 1986, Alan Niven founded a company called Stravinski Brothers Productions, through which to conduct his business affairs.  Mr. Niven incorporated his company as Stravinski Brothers Productions, Inc., a California corporation, in March 1986.  He continued to do business through that corporate entity until it was formally dissolved and terminated, effective December 1, 1994.  In connection with that dissolution and termination, he had the corporation assign to himself, as an individual, all rights, title and interest in the corporation's assets of any kind or nature whatsoever, owned, held or used in the conduct of the business of the corporation, including among

other things accounts receivable and contractual rights (including without limitation rights to royalties and to receive accountings, and to assert legal claims, rights of action, causes of action, and to assert rights or seek remedies as against third parties). Following dissolution and terminatin of the corporation, Mr. Niven carried on conducting his business as a sole proprietorship, under the name Stravinski Brothers Productions (sometimes shortened to Stravinski Brothers). As regards the accountings which are at the heart of this action, Defendants (and their predecessors in interest) have, at all times since 1994, dealt directly with Alan Niven individually doing business as Stravinski Brothers Productions, rendering accountings, correspondence and royalty payments to him as such.

13.     Great White is a rock band formed in Los Angeles in 1977. The band was especially successful from the mid-1980s through the early 1990s. Great White has continued to perform, with one lineup or another, off and on ever since then. Over the course of its career, it has sold more than 8 million records worldwide.

14.     In addition to its debut studio album "Great White" (released in 1984) and its second album "Shot in the Dark" (released in 1986), Great White's most successful albums included "Once Bitten" (released in 1987, recipient of RIAA Platinum Album and CRIA gold record awards), "…Twice Shy" (released in 1989, recipient of RIAA Gold, Platinum and Multi-Platinum Album and CRIA Gold and Multi-Platinum Album awards), "Hooked" (released in 1991, recipient of RIAA Gold Album and CRIA Gold Album awards), and "Psycho City" (released in 1992). All those albums were released by Capitol Records, except the first, which was released by Capitol's affiliate EMI North America).[1]

15.     The biggest singles released by Great White included "Face the Day" (released in 1986), "Rock Me," "Save Your Love" and "Lady Red Light" (all released in 1987), "Mista Bone," "Once Bitten, Twice Shy" (recipient of RIAA Gold Record award), "The Angel Song," "House of Broken Love" and "Call It Rock & Roll" (all released in 1989), "Desert Moon" (released in 1991), "Big Goodbye" and "Old Rose Motel" (both released in 1992), "Sail Away" (released in 1994), and "Rollin' Stoned" (released in 1999).

16.     No less than 17 compilation and "greatest hits" albums have been released by Great White, the first of which was "The Best of Great White, 1986-1992" (released by Capitol Records

---

[1] The minimum certified sale qualifications for these awards are: RIAA (Recording Industry Association of America)—500,000 U.S. sales for "Gold," 1,000,000 U.S. sales for "Platinum," and 2,000,000 or more U.S. sales for "Multi-Platinum"); and CRIA (Music Canada)—40,000 Canadian sales for "Gold," 80,000 Canadian sales for "Platinum," and 160,000 or more Canadian sales for "Multi-Platinum."

in 1993, recipient of RIAA Gold Album award). (Others released by Capitol Records and/or its affiliate EMI included "The Best of Great White" (released in 2000), "Rock Champions" (released in 2000), and "Greatest Hits" (released in 2001). Additionally, ten "live" albums have been released by Great White over the years, five of them by 1995.

17.     During the heyday of MTV in the 1980s and early 1990s, Great White also released 19 music videos, all but one of them by 1994. Fifteen of those were released between 1986 and 1992, while Great White was signed to Capitol Records. (One other was by a later iteration of the band in 2012.)

18.     In 1982, the band contracted with Plaintiff Alan Niven to serve as the band's manager, which he did throughout the period 1982 through 1995. Mr. Niven co-produced all but the first of Great White's albums released through 1995, wrote or co-wrote many of their songs, and performed as an occasional vocalist, sideman musician and arranger. All the albums and the singles released by the band while managed by Mr. Niven were released by Capitol Records.

19.     Most significantly for purposes of this action, in 1986 Great White also signed a contract with Stravinski Brothers Productions, Inc., for Stravinski to serve as the band's record label. After the band began working with Alan Niven in Summer 1986, Stravinski Brothers Productions, Inc. managed to obtain, negotiate and execute a recording contract with Capitol Records, Inc. for Great White's services, effectively assigning to Capitol Records various of Stravinski's rights under its recording contract with the band. That agreement between Stravinski Brothers Productions, Inc. and Capitol Records, Inc. (Capitol Contract No. 7094), is dated June 23, 1986, and referred to herein as the "1986 Great White Agreement." Pursuant thereto Defendants are (and their predecessors in interest were) obligated to collect and account to Stravinski on a semi-annual basis for all income from the exploitation and sale of Great White audio and video recordings. (After Stravinski Brothers Productions, Inc. was dissolved in 1994, that obligation became owed to its assignee, Alan Niven, individually.) The 1986 Great White Agreement included, among other things, detailed provisions governing the parties' recording activities; formulae for calculation of royalties based on revenues from sales and exploitation of Great White audio and visual recordings and requirements as to Capitol's accounting therefor; provisions for payment of (and later recoupment of) advances from Capitol to Stravinski including for production costs relating to music and video recordings; and audit rights with regard to accounting statements.

20.     At no time in or since 1986 did Stravinski Brothers Productions, Inc. or either of Plaintiffs authorize the payment or incurring by Capitol Records, Inc, or any of its successors in interest, of any advances or production costs relating to Great White music videos that were not

fully repaid or recouped long ago. Indeed, Plaintiffs are informed and believe, and on that basis allege, that all production costs and advances relating to music videos produced under or pursuant to the 1986 Great White Agreement were fully repaid to or recouped by Defendants' predecessors in interest prior to the year 2000.

21. Even though Defendants and their predecessors in interest have rendered purportedly comprehensive semi-annual accountings relating to Great White income and expenses each year in and since 1986 under and pursuant to the 1986 Great White Agreement, at no time from 1986 to January 2018 did Defendants or any of their predecessors advise Stravinski or Alan Niven of the existence of any account (or account number) pertaining to or reflecting the existence or amount of any production costs or advances relating specifically to Great White music videos and that are still, at present, allegedly unrecouped.

22. Prior to March 2018, Plaintiffs had no reason, arising from or relating to any previous accountings rendered to Alan Niven by Plaintiffs or their predecessors relating to the 1986 Great White Agreement, to question the accuracy or veracity of those accountings. Consequently, Plaintiffs never previously undertook the expense and inconvenience of an audit of Defendants' or their predecessors' accounting books and records.

23. At no time in or after 1986 did Stravinski Brothers Productions, Inc. or either of Plaintiffs authorize the payment of any sum whatsoever, by Capitol Records, Inc. or any of its successors in interest, to Gunilla Larsson Niven or to any other third party at her request or direction, much less authorize or agree to have any such payment ever to be repaid or recoupable in whole or in part from any royalties due under the 1986 Great White Agreement; neither, in or since 1986, has Alan Niven ever consented to or ratified any such payment.

24. At no time has any accounting from Defendants or their predecessors in interest ever acknowledged or identified any payment made by them to Gunilla Larsson Niven or any other third party at her request or direction, much less assert that any such payment was expected to be repaid or recoupable in whole or in part from any royalties due under the 1986 Great White Agreement.

25. In early March 2018, Plaintiff Alan Niven received from Defendants a one-item accounting (separate and apart from any regular semi-annual accountings) relating to Great White. That accounting, entitled "Artist Royalty Summary for Period 12/31/17," referenced an account number ****6561 that had never been seen before by Plaintiffs and had never been included in any of the prior accountings, and purported to reflect a deficit owed to Defendants by Alan Niven in the amount of $981,137.29. Plaintiffs had no clue what this pertained to. That accounting, on its face and implicitly, purported to be true and accurate; represented as fact that some $981,137.29 in

ALAN G.
DOWLING, A
PROFESSIONAL
CORPORATION
Santa Monica, CA

*Niven v. Universal Music Group, Inc. et al.* –
USDC, CD CA, 2:23-cv-7917

6

*COMPLAINT*

debt had been incurred by Defendants and/or their predecessors relating to Great White; represented that said sum was properly accountable under the terms of the 1986 Great White Agreement; and represented that under the 1986 Great White Agreement Defendants were and would continue to be entitled to recoup that amount from any future royalties otherwise payable to Plaintiffs.

26.     Plaintiffs thereafter contacted Defendants, seeking an explanation.   In communications with UMG's employees John Ray and Jeff McGowan (and possibly others) Plaintiffs were informed that this was an account that related to "unrecouped Great White video expenses." (The February 28, 2018, accounting is therefore referred to hereinafter as the "February 28 GW Video Accounting".) However, over the course of multiple conversations over several months, in which UMG employees suggested they had no personal knowledge of the matter but assured Plaintiffs that they would look into it, no substantive additional information was forthcoming.  Unable to make any progress in resolving this, Plaintiffs retained an attorney to approach UMG on their behalf.  Over many months, Plaintiffs' attorney communicated with UMG employees and was likewise repeatedly assured that UMG wanted to resolve the matter amicably, were looking into the situation, and would obtain and provide an explanation and documentation to explain and justify the accounting entry relating to the purported unrecouped Great White video expenses.  Notwithstanding their promises and assurances, they failed to provide that information.

27.     In the midst of those attempts to get an explanation, in or about early 2020 Plaintiff Alan Niven coincidentally received, out of the blue, information from one of his children to the effect that, reportedly, his ex-wife Gunilla Larsson Niven had approached Defendants' predecessor in interest in or about 2004, and managed to get the record company to pay her something in the range of $1 million, on what basis and under what terms of agreement Plaintiffs still have been unable to ascertain.  Both Gunilla Larsson Niven and the record company (Plaintiffs and their predecessors) concealed from Plaintiffs the very fact of that payment, its rationale, its specific amount and the terms of any agreement they may have made relating thereto, and under what authority it was ever made (much less why it has been associated with Plaintiff Alan Niven or Great White at all), and neither Gunilla Larsson Niven nor the record company has ever even acknowledged or explained any of that, to date.

28.     Having gotten nowhere attempting amicably to get any explanation from Defendants  regarding the February 28, 2018 GW Video Accounting, and likewise unable to get any information or acknowledgement from Gunilla Larsson Niven or Defendants regarding the purported payment made to her around 2004, Alan Niven had attorneys proceed to initiate two lawsuits, one of them in Los Angeles Superior Court against Universal Music Group, Inc., and

ALAN G.
DOWLING, A
PROFESSIONAL
CORPORATION
Santa Monica, CA

*Niven v. Universal Music Group, Inc. et al. –*
*USDC, CD CA, 2:23-cv-7917*                                                              *COMPLAINT*

7

another in Superior Court in Arizona against Gunilla Larsson Niven.

29.     The Los Angeles Superior Court action was filed March 1, 2021, and served upon Defendants.  Forthwith, Defendants contacted Plaintiffs' attorney, expressing a desire to avoid litigation and again promising to investigate, report back with an explanation, and obtain whatever documentation they could, justifying the accounting entry.  After some discussion, Defendants induced Plaintiffs' counsel to enter into a tolling agreement.  The Tolling Agreement was entered between Alan Niven and Universal Music Group, Inc. dba Capitol Records on April 29, 2021, and provided that, in return for Plaintiffs dismissing the Los Angeles litigation without prejudice forthwith (which they did), any applicable statute of limitations would toll until at least April 1, 2022, while Defendants conducted their investigation.  Despite that Tolling Agreement and those assurances, and the passing of yet another year, and Plaintiffs were still unable to obtain further information, explanation or any documentation from Defendants relating to (much less justifying) the disputed accounting entry. Defendants continued to induce Plaintiffs to refrain from litigating, while also continuing to stonewall Plaintiffs and keep them in the dark.

30.     Plaintiffs' continuing efforts to obtain further information or explanation concerning the February 28 GW Video Accounting or the undisclosed 2004 reported payment to Gunilla Larsson Niven have been to no avail, leaving Plaintiffs no alternative but to re-institute this action and actively pursue their claims, resorting to the force of law and, if necessary, court orders to obtain and examine all pertinent information, accounting books, records and files, and related documentary evidence.  Moreover, given the anomaly of the mystery posed by the February 28 GW Video Accounting, Defendants' failure to provide, after many months of patient inquiry, any reasonable explanation, justification or documentation for the disputed accounting entry (instead resorting to increasingly evident stonewalling), and also the previously-undisclosed and improper payment around 2004 to Gunilla Larsson Niven, legitimate questions have arisen concerning the accuracy of potentially all accountings rendered by Defendants and their predecessors under or relating to the 1986 Great White Agreement, from its inception.  There is also reason to believe that the amount alleged to reflect unrecouped advances to Great White for product of other video-related expenses or advances as reflected in the February 28 GW Video Accounting may actually be related to with the reported 2004 advance to Gunilla Larsson Niven, and in effect represents Defendants' attempt to claw back that amount out of the pockets of Plaintiffs by wrongfully depriving them of future (and perhaps unpaid past) royalties even though Plaintiffs had nothing to do with Defendants' payment to Gunilla Larsson Niven.

31.     As a result of the events and circumstances described above,  Plaintiffs by this

ALAN G.
DOWLING, A
PROFESSIONAL
CORPORATION
SANTA MONICA, CA

*Niven v. Universal Music Group, Inc. et al. –*
*USDC, CD CA, 2:23-cv-7917*

8

*COMPLAINT*

Complaint seek, along with other compensatory and punitive relief, a comprehensive court-ordered accounting, and also hereby notify Defendants of Plaintiff's demand to conduct a contractual audit pursuant to Paragraph 8 of the 1986 Great White Agreement, in each instance examining all of Defendants' and their predecessors' books and records relating to all Great White-related accountings from the inception of the 1986 Great White Agreement to the present (in particular, but without limitation, with respect to the subject matter of and facts underlying the February 28 GW Video Accounting and the reported 2004 payment to Gunilla Larsson Niven).

<u>FIRST CLAIM FOR RELIEF</u>

(For Intentional Misrepresentation-

By Plaintiffs Against All Defendants)

32.    Plaintiffs reallege and incorporate herein by reference, as if set forth at length, every allegation contained in Paragraphs 1 through 31, inclusive, hereinabove.

33.    Defendants represented to Plaintiffs that certain facts were true, as set forth in detail hereinabove.

34.    Defendants' representations pertaining to the February 28 GW Video Accounting, its truthfulness and accuracy, and Defendants' claims of entitlement to recoupment embodied and communicated therein, and in semi-annual accountings and other communications to Plaintiffs since then, were false.  Likewise false were Defendants' employees' repeated assurances that they would investigate the matter of that accounting, provide Plaintiffs with an explanation and justification for its assertions, and provide documentation evidencing what it pertained to.

35.    Defendants knew that the representations were false when Defendants made them, and/or they made the representations recklessly and without regard for their truth.

36.    Resorting to "hide the ball" and "stonewall" tactics, Defendants intended that Plaintiffs rely on the representations, and hoped thereby to disincentivize Plaintiffs from pursuing their inquiry as to these disputed matters, avoid the expense and burdens of actual litigation, and hope that Plaintiffs would eventually give up and simply walk away in frustration, despite the lack of any resolution.

37.    From March 2018 through at least April 2, 2022, Plaintiffs reasonably a n d j u s t i f i a b l y relied on Defendants' repeated representations and promises.

38.    As a direct and proximate result of Defendants' intentional misrepresentations and Plaintiffs' reasonable reliance thereon, Plaintiffs have been damaged in an amount as yet unascertained but which Plaintiffs are informed and believe exceeds $981,137.29, and Plaintiffs will seek leave to set forth herein the correct sum by amendment when it has been ascertained.

ALAN G. DOWLING, A PROFESSIONAL CORPORATION
SANTA MONICA, CA

*Niven v. Universal Music Group, Inc. et al. –
USDC, CD CA, 2:23-cv-7917*

*COMPLAINT*

39.     In doing the acts alleged, Defendants each acted willfully, fraudulently, maliciously, oppressively and with intent to injure Plaintiffs, and with intentional and/or reckless disregard for the rights and interests of Plaintiffs, as a result of which Plaintiffs are entitled to punitive and exemplary damages against Defendants and each of them in such amount as the proof at trial may indicate is appropriate.

SECOND CLAIM FOR RELIEF

(For Concealment-

By Plaintiffs Against All Defendants)

40.     Plaintiffs reallege and incorporate herein by reference, as if set forth at length, every allegation contained in Paragraphs 1 through 31, inclusive, hereinabove.

41.     Defendants were required by written contract to timely and accurately account to Plaintiffs for, and pay to Plaintiffs, certain revenues earned under and pursuant to the 1986 Great White Agreement.  Nevertheless, Defendants disclosed some facts to Plaintiffs but intentionally failed to disclose other material facts, making the disclosures that were made deceptive; intentionally failed to disclose certain material facts that were known only to Defendants and that Plaintiffs could not have independently discovered; and prevented Plaintiffs from discovering facts pertinent to Plaintiff's rights and entitlements under the 1986 Great White Agreement.

42.     Plaintiffs did not know of the concealed facts.

43.     Defendants concealed the facts with intent to defraud and deceive Plaintiffs.

44.     Had the omitted information been disclosed, Plaintiffs reasonably would have behaved differently, including without limitation taking steps to attempt to ascertain the true facts, protect and preserve their rights, and to prevent such eventualities from occurring.

45.     As a direct and proximate result of Defendants' concealment, Plaintiffs has been damaged in an amount as yet unascertained but which they are informed and believe exceeds $981,137.29, and Plaintiffs will seek leave to set forth herein the correct sum by amendment when it has been ascertained.

46.     In doing the acts alleged, Defendants each acted willfully, fraudulently, maliciously, oppressively and with intent to injure Plaintiffs, and with intentional and/or reckless disregard for the rights and interests of Plaintiffs, as a result of which Plaintiffs are entitled to punitive and exemplary damages against Defendants and each of them in such amount as the proof at trial may indicate is appropriate.

///

THIRD CLAIM FOR RELIEF

(For Negligent Misrepresentation-

By Plaintiffs Against All Defendants)

47.    Plaintiffs reallege and incorporate herein by reference, as if set forth at length, every allegation contained in Paragraphs 1 through 31, inclusive, hereinabove.

48.    Defendants represented to Plaintiffs that certain facts were true, as set forth in detail hereinabove.

49.    Defendants' representations were false.

50.    When Defendants misrepresented these facts to Plaintiffs, even if Defendants may have honestly believed their representations to be true, Defendants did so having no adequate or reasonable basis in knowledge or information as to the true facts to know or reasonably believe their own representations to be true, even though with the exercise of reasonable diligence they could have determined such knowledge or information as to the true facts before making any such representations to Plaintiffs.

51.    Defendants intended that Plaintiffs rely on these representations.

52.    Plaintiffs reasonably relied on Defendants' representations.

53.    As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiffs have been damaged in an amount as yet unascertained but which they are informed and believe exceeds $981,137.29, and Plaintiffs will seek leave to set forth herein the correct sum by amendment when it has been ascertained.

FOURTH CLAIM FOR RELIEF

(For Breach of Written Contract-

By Plaintiffs Against All Defendants)

54.    Plaintiffs reallege and incorporate herein by reference, as if set forth at length, every allegation contained in Paragraphs 1 through 31 inclusive, hereinabove.

55.    Plaintiff and Defendants entered into, and are subject to the terms and conditions of, a written contract (the 1986 Great White Agreement, as described hereinabove).

56.    At a date uncertain after February 28, 2018, but prior to September 24, 2021, the parties to the 1986 Great White Agreement further agreed to, and Defendants acted upon, an amendment or modification of the 1986 Great White Agreement whereby Defendants would split the amount accounted for and stated by them in UMG Account No. ****6561 into two equal portions allocable fifty percent (50%) each to Plaintiff Alan Niven and Plaintiff Heather Niven, respectively (instead of Alan Niven alone, as had theretofore been the case commencing February

28, 2018).  Pursuant to such amendment, UMG Account No. ****6561, at all pertinent times, reflected a massive purported deficit (a debt purportedly payable by each of the Plaintiffs to Defendants, recoupable from certain Great White revenues that would otherwise be payable to the Plaintiffs).  If such actions by Defendants are for any reason not characterized as an amendment or modification, then such change in the accounting constituted  an implied-in-fact contract based on the conduct and relationship of the parties, engaged in and implemented intentionally by Defendants and with knowledge, or reason to know, that Plaintiffs would interpret such conduct as an agreement to treat the manner of such accounting under that written contract as having been thus changed, and would be personally affected thereby.  Heather Niven thereupon became a party, or at least a real party in interest, with respect to the 1986 Great White Agreement, as thus amended or modified.

57.    Plaintiffs have performed all, or substantially all, of the significant conditions, covenants and promises required on Plaintiffs' part to be performed under the terms of the 1986 Great White Agreement, except as excused or prevented from doing so by the conduct of Defendants.

58.    Defendants failed to do things that the contract (as amended) required them to  do as regards the rendering of Great White accountings, all as more fully set forth in detail hereinabove; to wit, Defendants failed to render timely and accurate accountings and to make timely payment in full of royalties due.

59.    As and to the extent Defendants in or around 2004 paid a sum in the range of $1 million to Alan Niven's ex-wife Gunilla Larsson Niven (or per her directions, without the knowledge, consent or ratification of Alan Niven) and purported to designate that payment as being related in any manner whatsoever to Great White or Alan Niven, Defendants acted in a manner prohibited by the 1986 Great White Agreement.

60.    In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will do nothing to unfairly interfere with the right of any other party to receive the benefits of the contract, including without limitation the right to receive timely accountings and payment of royalties due.

61.    Defendants violated the duty to act fairly and in good faith.

62.    Defendants unfairly interfered with Plaintiffs' right to receive the benefits of the contract.

63.    As a direct and proximate result of Defendants' breach of the agreement, Plaintiff has been damaged in an amount unascertained but which it is informed and believes exceeds

ALAN G.
DOWLING, A
PROFESSIONAL
CORPORATION
Santa Monica, CA

*Niven v. Universal Music Group, Inc. et al. –*
*USDC, CD CA, 2:23-cv-7917*                          *COMPLAINT*
12

$981,137.29, and Plaintiff will seek leave to set forth herein the correct sum by amendment when it has been ascertained.

64.    This claim is pled in part in the alternative, in so far as Plaintiffs have also set forth herein their claims for intentional misrepresentation and concealment, and this claim sounding in negligence is neither intended to, nor shall it be deemed to, prejudice, limit, alter or waive their said claim for intentional torts, should they prevail thereon.

FIFTH CLAIM FOR RELIEF

(For Conversion-

By Plaintiffs Against All Defendants)

65.    Plaintiffs incorporate herein by reference as if set forth at length each and every allegation contained in Paragraphs 1 through 31 inclusive, hereinabove.

66.    Based on the afore-described facts, events, acts and omissions Defendants and each of them have wrongfully converted the property of Plaintiffs for their own use and commercial exploitation.  Such property includes without limitation all monies in the possession of Defendants which they received as income or revenues pursuant to the 1986 Great White Agreement and which would have been due and payable as royalties to either or both of Plaintiffs, but which were not timely or accurately accounted for and paid.  For example, but without limitation, Defendants falsely asserted (by means of UMG Account No. ****6561) that sums certain were subject to recoupment by Defendants as alleged costs, expenses and deficits relating to Great White videos, and Plaintiffs are informed and believe that, on the basis of that pretext, monies owed to Plaintiffs were wrongfully withheld by Defendants, commingled with their own monies, and have since been used for Defendants' own purposes.  Defendants have thus substantially interfered with Plaintiffs' property by knowingly and willfully engaging in such acts without Plaintiffs' consent, and have exercised ownership over such sums and prevented Plaintiffs from recovering such sums.

67.    Defendants have failed to cease wrongfully using and converting the property of Plaintiffs despite demand that they do so.

68.    As a direct and proximate result of Defendants' conduct, Plaintiffs have sustained, and will continue to sustain, substantial injury, loss and damages, the exact amounts of which Plaintiffs have not as yet been able to ascertain, although Plaintiffs are informed and believe and thereon allege exceed the sum $981,137.29, exclusive of interest and costs.  Plaintiffs will seek leave of Court to amend this Complaint to allege the exact amount of such damage if, when and to the extent such amount can be ascertained.

ALAN G.
DOWLING, A
PROFESSIONAL
CORPORATION
Santa Monica, CA

*Niven v. Universal Music Group, Inc. et al. –
USDC, CD CA, 2:23-cv-7917*                                          *COMPLAINT*

13

69.     In engaging in the conduct of which Plaintiffs complain herein, Defendants and each of them have acted with oppression, fraud and malice, with the intent to cause injury to Plaintiffs and/or in reckless disregard of the rights and interests of Plaintiffs, and Plaintiffs are consequently entitled to an award of punitive and exemplary damages against Defendants and each of them, in an amount to be determined by the trier of fact, and all according to proof.

70.     The harm these wrongful acts will cause to Plaintiffs is both imminent and irreparable, and the amount of damage sustained by Plaintiffs will be difficult to ascertain if these acts continue. Plaintiffs have no adequate remedy at law.  Accordingly, Plaintiffs are also entitled to an injunction restraining Defendants, their officers, directors, agents, employees, and all persons acting with, under, for or in concert with them from engaging in further such unlawful conduct, and specifically prohibiting Defendants from asserting any claim of entitlement to recoupment for alleged costs, expenses or deficits relating to any Great White music videos produced prior to the year 2000.

<u>SIXTH CLAIM FOR RELIEF</u>

(For Declaratory Relief-

By Plaintiffs Against All Defendants)

71.     Plaintiffs reallege and incorporate herein by reference, as if set forth at length, every allegation contained in Paragraphs 1 through 39, inclusive, hereinabove.

72.     Plaintiffs contend:

A.     All advances, production costs and other expenses ever incurred by Defendants or their predecessors in interest and which Defendants presently contend to be recoupable from royalties otherwise payable to Plaintiffs under the 1986 Great White Agreement have in fact already been fully recouped and/or repaid;

B.     Consequently, any purported deficit reflected in current accountings from Defendants to Plaintiffs is false and incorrect, and not in fact owed by Plaintiff;

C.     Defendants' Account No. ****6561, propounded to Alan Niven, and alleged by Defendants to be due by both Alan Niven and Heather Niven individually, is baseless, nugatory and is neither recoupable, reimbursable or repayable by either of Plaintiffs;

D.     Any past payments made by Defendants or their predecessors to Gunilla Larson Niven had nothing to do with either of Plaintiffs, or with Great White; Plaintiffs and Great White have no obligations to Defendants in respect thereto; and neither all nor any part of said amount is repayable by, reimbursable by, or

ALAN G.
DOWLING, A
PROFESSIONAL
CORPORATION
SANTA MONICA, CA

*Niven v. Universal Music Group, Inc. et al. –*
*USDC, CD CA, 2:23-cv-7917*

14

*COMPLAINT*

recoupable from Plaintiffs or Great White.

73.     On information and belief, Defendants and each of them dispute these contentions and contend to the contrary.

74.     Plaintiffs desire a judicial determination of its rights and duties, and those of Defendants' respectively, and a declaration as to whether Plaintiffs' interpretation of the effect of the aforesaid agreements and facts, and of the respective rights and obligations of the Plaintiffs and Defendants, is correct.

75.     An actual controversy has arisen between the parties, and a judicial declaration or the respective rights of the parties is necessary and appropriate at this time, so that the rights and obligations if any of the Plaintiffs and Defendants as between themselves regarding the business endeavors identified and described hereinabove, and any contracts alleged, may be ascertained.

<u>SEVENTH CLAIM FOR RELIEF</u>

(For an Accounting-

By Plaintiffs Against All Defendants)

76.     Plaintiffs reallege and incorporate herein by reference, as if set forth at length, every allegation contained in Paragraphs 1 through 31 inclusive, hereinabove.

77.     A balance is due from Defendants and each of them to Plaintiffs, for nonpayment of sums due and payable to Plaintiffs under and pursuant to the 1986 Great White Agreement and for Defendants' misappropriation of profits and gross receipts arising from or attributable to the distribution, sale and other exploitation of products under and pursuant to that Agreement, and for the value of all other consideration and benefits received by Defendants because of their wrongful conduct herein alleged, which balance can only be ascertained through an accounting.

<u>EIGHTH CLAIM FOR RELIEF</u>

(For Imposition of a Constructive Trust-

By Plaintiffs Against All Defendants)

78.     Plaintiffs reallege and incorporate herein by reference, as if set forth at length, every allegation contained in Paragraphs 1 through 31 inclusive, hereinabove.

79.     As a result and consequence of their conduct alleged above, Defendants and each of them are involuntary trustees, holding in trust all gross receipts and other valuable consideration heretofore received or which may be hereafter earned or received by them (including without limitation all revenues from their licensing, sale and other exploitation of rights and products) under, pursuant to or as a result of the performance of the 1986 Great White Agreement; and that Defendants hold such moneys and funds on behalf of, and subject to a first and prior lien against

ALAN G.
DOWLING, A
PROFESSIONAL
CORPORATION
SANTA MONICA, CA

*Niven v. Universal Music Group, Inc. et al. –
USDC, CD CA, 2:23-cv-7917*                    15                    *COMPLAINT*

all others and in favor of Plaintiffs.

80.    Plaintiffs are entitled to the remedy of imposition of a constructive trust because of Defendants' said wrongful conduct.

PRAYER

WHEREFORE, Plaintiffs ALAN G. NIVEN and HEATHER VINCENT-NIVEN pray for judgment in their favor and against Defendants and each of them, as follows:

On the First Claim for Relief, for the damages suffered by Plaintiffs as a result of the acts of intentional misrepresentations complained of herein, plus an award of punitive and exemplary damages against Defendants and each of them in the amount of no less than $5 million, all according to proof, plus interest at the maximum legal rate;

On the Second Claim for Relief, for the damages suffered by Plaintiffs as a result of the acts of concealment complained of herein, plus an award of punitive and exemplary damages against Defendants and each of them in the amount of no less than $5 million, all according to proof, plus interest at the maximum legal rate;

On the Third Claim for Relief, for the damages suffered by Plaintiffs as a result of the acts of negligent misrepresentation complained of herein, all according to proof, plus interest at the maximum legal rate;

On the Fourth Claim for Relief, for the damages suffered by Plaintiffs as a result of the acts of breach of written contract complained of herein, all according to proof, plus interest at the maximum legal rate;

On the Fifth Claim for Relief, for the damages suffered by Plaintiffs as a result of the acts of conversion complained of herein, plus an award of punitive and exemplary damages against Defendants and each of them in the amount of no less than $5 million, all according to proof, plus interest at the maximum legal rate; and for preliminary and permanent injunctive relief according to proof;

On the Sixth Claim for Relief, for a declaration and judgment that the contentions of Plaintiffs, as set forth in Paragraph 72 hereinabove, are correct;

On the Seventh Claim for Relief, for an accounting to determine the amount due from Defendants and each of them to Plaintiffs and each of them, for Defendants' misappropriation of (and failure to timely pay) royalties or other sums due and payable under and pursuant to the 1986 Great White Agreement, and for the value of all other consideration and benefits received by Defendants as a result of their wrongful conduct alleged herein;

On the Eighth Claim for Relief, for imposition of a constructive trust, implementing an

ALAN G.
DOWLING, A
PROFESSIONAL
CORPORATION
Santa Monica, CA

*Niven v. Universal Music Group, Inc. et al. –
USDC, CD CA, 2:23-cv-7917*                              16                              *COMPLAINT*

order of the Court that Defendants and each of them are involuntary trustees, holding in trust all gross receipts and other valuable consideration heretofore received or which may be hereafter earned or received by them (including without limitation all revenues from their licensing, sale and other exploitation of rights and products) under, pursuant to or as a result of the performance of the 1986 Great White Agreement; and that  Defendants hold such moneys and funds on behalf of, and subject to a first and prior lien against all others and in favor of, Plaintiff;

On all Claims for Relief, for Plaintiffs' reasonable attorneys' fees and costs of suit incurred herein, to the maximum extent permissible by law; and

On all Claims for Relief, for such other and further relief in favor of Plaintiffs as the Court may deem just and proper.

Dated:        September 21, 2023            **LAW OFFICES OF ALAN G. DOWLING**

By:   *Alan G. Dowling*

Alan G. Dowling
*Attorneys for Plaintiffs* ALAN G. NIVEN and
HEATHER VINCENT-NIVEN

ALAN G.
DOWLING, A
PROFESSIONAL
CORPORATION
SANTA MONICA, CA

*Niven v. Universal Music Group, Inc. et al. –
USDC, CD CA, 2:23-cv-7917*                    17                    *COMPLAINT*

## **REQUEST FOR JURY TRIAL**

Plaintiffs ALAN G. NIVEN and HEATHER VINCENT-NIVEN, and each of them, respectfully request a trial by jury of all claims asserted herein which by law can be tried by a jury.

Dated:       September 21, 2023         **LAW OFFICES OF ALAN G. DOWLING**


By:   *Alan G. Dowling*
————————————————
Alan G. Dowling
*Attorneys for Plaintiffs* ALAN G. NIVEN and
HEATHER VINCENT-NIVEN

ALAN G.
DOWLING, A
PROFESSIONAL
CORPORATION
SANTA MONICA, CA

*Niven v. Universal Music Group, Inc. et al. –
USDC, CD CA, 2:23-cv-7917*                18                    *COMPLAINT*